33744, 33745.   WEBB *v.* SANDOZ CHEMICAL WORKS INC.;
and *vice versa.*

DECIDED FEBRUARY 28, 1952.

*Dorsey & Dorsey, Scott Hogg,* for plaintiff.

*T. J. Long,* for defendant.

WORRILL, J. (After stating the foregoing facts.) ■ The petition set forth a cause of action, and the court did not err in

denying the defendant's motion to dismiss it. See *Blood Balm Co.* v. *Cooper,* 83 *Ga.* 457 (10 S. E. 118).

■ Recovery in the present case is sought on the theory that the defendant, without disclosing its dangerous properties, was negligent in putting on the market the poisonous medication known as "Cafergone," some of which was taken by the wife of the plaintiff with damaging results. It is not contended, or shown by the evidence, that the product was adulterated or otherwise than what it was supposed to be, a combination of ergotamine tartrate and caffeine. No similar case seems to have been before the appellate courts of this State. *Blood Balm Co.* v. *Cooper,* supra, is not in point. There the Supreme Court was dealing with a case where a patent medicine, a secret formula, containing iodine of potash in excess of accepted practice, was sold and recommended indiscriminately to the public, and not merely for use upon the advice and prescription of a physician. Here the medication in tablet form was sold to druggists in sealed bottles with accompanying caution in writing that it was "to be dispensed only by or on the prescription of a physician," and the directions also contained the precaution that it "should be taken under medical supervision." It was testified by a prescriptionist in the drug store from which the tablets used by the plaintiff's wife were purchased that he took them from such a bottle on a shelf, and put them in a "prescription box" with a proper label for the wife.

Certainly no liability attaches merely because injury followed the ingestion of the medicine under such circumstances of marketing. See *Armour & Co.* v. *Gulley,* 61 *Ga. App.* 414 (6 S. E. 2d, 165). The evidence showed that it was good medical practice to prescribe Cafergone within the limitations recommended by the defendant, notwithstanding the fact that sometimes bad results might follow where persons had individual sensitivity to drugs not discoverable in the exercise of ordinary care. The wife's physician testified, "She was idiosyncratic to it or she had vascular disease that I, even though I did all I could within my knowledge, overlooked in my diagnosis of the case." While one physician testified that he would not prescribe Cafergone and considered it dangerous, liability is not thereby fixed. See *Mayo* v. *McClung,* 83 *Ga. App.* 548, 556 (2) (64 S. E. 2d, 330). The

degree of care to be exercised by a manufacturing chemist in compounding and selling a medication with a prescription, as here, is that which is prescribed by the Code, § 84-924, as to the "administering of medicine" professionally, to wit, a reasonable degree of care and skill. "This standard prescribed by the Code, 'when applied to the facts and circumstances of any particular case, must be taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by the profession generally.' " *Bryan* v. *Grace,* 63 *Ga. App.* 373 (1a) (11 S. E. 2d, 241). The evidence demanded a finding that no negligence was shown on the part of the defendant. The doctrine of res ipsa loquitur has no application under the facts presented.

The judgment denying the motion to dismiss was affirmed by this court in division 1 of the opinion on the theory that, under the allegations of the petition, the pleader meant to present a case where the medicine was recommended to the public for the relief of pain from migraine headaches without cautioning that it should be dispensed only by or on the prescription of a physician; whereas the evidence here shows that such caution had been given in writing by the defendant in disposing of its product. Consequently the case was not proved as laid, and no negligence being shown, the court properly granted a nonsuit.

*Judgment affirmed. Sutton, C. J., and Felton, J., concur.*